GEORGE E. MAY, Appellant, v. A. H. BRACKETT, Appellee.

**Real property:** CONTRACT OF SALE: OPTION. A contract between the owner and an alleged purchaser of land that a survey, plat and sale of the land as lots should be made at the expense of the purchaser, the contracts of sale and payments to be made to the owner until he had received a certain price per acre for his land, when the unsold portion was to be conveyed to the purchaser, and also exempting the

purchaser from liability in case of his failure to perform and providing a forfeiture for such failure, was not a contract of purchase and sale but a mere option.

**Same:** INSTRUCTION: PREJUDICE. An instruction permitting the jury
2  to consider certain oral evidence tending to show a consummated sale by defendant, thus authorizing it to construe the contract notwithstanding its written provisions creating a mere option, whether right or wrong, was favorable to plaintiff and therefore he will not be heard to complain of the same.

**Same:** RECOVERY OF COMMISSIONS: EVIDENCE. The evidence in this
3  action is held to support a finding that the alleged contract with plaintiff for commissions did not contemplate such an agreement as was afterwards made by the owner with another person for the survey and sale of the property in lots.

*Appeal from Floyd District Court.*—HON. C. H. KELLEY, Judge.

WEDNESDAY, MARCH 12, 1913.

THIS is an action for commission on sale of real estate. Upon trial to a jury, there was a verdict and judgment for the defendant. The plaintiff has appealed.—*Affirmed.*

*Blythe, Markley, Rule & Smith,* and *J. C. Campbell,* for appellant.

*Ellis & Ellis,* for appellee.

EVANS, J.—Plaintiff sued upon express contract. His testimony in support thereof is as follows:

I called on Mr. Brackett at his house and asked him if he wanted to sell what we call his twenty up north of the tracks, and he said he did. I asked him what he would take for it, and he said $5,000. I told him a man had been in the bank inquiring for such property, and I thought I could get $6,000 for it, and, if the gentleman came up there, he was to ask him $6,000, and that would give him $5,000 and I would get

the $1,000 for selling the property or for bringing the purchaser. Mr. Brackett said, 'Very well, I will do that,' or words similar to that. . . . I asked Mr. Brackett if he wanted to sell that twenty of his across the tracks, and he said that he did; that he wanted $5,000 net. I told him that I could sell it for $6,000, and that he was to ask the gentleman that I would send up $6,000, so that Mr. Brackett would get his $5,000 net and I would get my profit over and above that, and he said he would do it and would ask that when the man came up.

The plaintiff also pleaded that he procured one Reynolds as a "purchaser, to whom the defendant made sale of said property for the sum of more than $6,000."

The defendant denied that he had ever entered into the alleged contract with the plaintiff, and denied that he ever sold the property in question to Reynolds.

The case is presented here upon four exceptions. Three of these are based upon the refusal of the trial court to give three certain instructions requested by plaintiff, and the fourth is based upon the fifth instruction given by the trial court. A consideration of these exceptions requires a preliminary statement of the salient evidence. It was undisputed that the plaintiff sent Reynolds to the defendant. But whether the defendant knew that the plaintiff had sent him was in dispute.

The plaintiff was president of one of the banks at Charles City, and was a near neighbor of the defendant; their residences being upon adjoining lots. It is the contention of the defendant that he never entered into any agreement with the plaintiff. He testified that he had a conversation with the plaintiff concerning the sale of his property wherein he mentioned a price of $5,000, and that the plaintiff advised him to ask $6,000. Shortly afterwards Reynolds called upon him and asked his price. The price was stated as $6,000. Such price was assented to by Reynolds, but he disclosed to the defendant that he did not propose to become a buyer himself. He wanted only to become an agent for the sale of the prop-

erty. This was not satisfactory to the defendant, and he reduced his offered price to $5,000, but the offer was not accepted. The property in question consisted of about twenty-four acres adjoining the city of Charles City. Reynolds' plan was that he be permitted to survey and plat this tract into town lots, and that he should offer the same for sale upon long-time and small payments, viz., $1 down and 50c per week, with no interest on deferred payments. In pursuance of this plan, a written contract was finally entered into. It is the contention of the plaintiff (appellant) that this written contract was in legal effect a contract of sale, and all his exceptions rest upon that proposition. We direct our attention, therefore, to that question.

The contract is lengthy, and we shall have no need to set it out literally. The substance was that Reynolds undertook to survey and plat the tract at his own expense, and to offer the lots for sale, as before indicated. The contracts of sale, if any, were to be performed by the defendant, and the proceeds were to be paid to him. It was provided, however, that, after he had received a total sum amounting to $335 per acre, he should then convey all the unsold remainder to Reynolds. It contained provisions of forfeiture as against Reynolds if he failed to meet certain conditions. It did not, however, bind Reynolds to any performance. On the contrary, it exempted him from all liability for any failure of performance; the right of forfeiture being the defendant's sole remedy as against him. Looking at this contract alone, and without any reference to the acts of the parties thereafter in pursuance thereof, it was clearly not a contract of purchase and sale. It was not only wholly executory, but it bound Reynolds to no performance. It was purely optional as to him. Whether a sale could be found from the later actions of the parties in pursuance of the contract is a somewhat different question. But we see no relief for plaintiff even along that line.

1. REAL PROP-
ERTY: contract
of sale: option.

II.   The trial court instructed the jury as follows:

(3)   In order for plaintiff to recover in this action, it must be proved, by the weight or preponderance of the evidence introduced upon the trial, the plaintiff and defendant did in fact enter into an oral contract in reference to defendant's property; that plaintiff procured a purchaser, one Mr. Reynolds, for said land; and that the defendant sold said property to said Reynolds for $6,000 or more, substantially as claimed by the plaintiff as set out in paragraph 1 hereof. . . . (5) If you find, from weight or preponderance of the evidence introduced upon the trial, that defendant did in fact enter into a contract with said Reynolds, whereby the defendant agreed to sell to said Reynolds, and said Reynolds agreed to purchase from defendant, said land, and that such agreement was afterwards consummated, then it is wholly immaterial whether or not said land was in fact in whole or in part deeded or contracted by defendant to be deeded to said Reynolds or any other person or persons.  The form of the transaction is of no special importance.  The questions to be determined by you are as stated in paragraph 3 hereof.

Appellant complains of instruction No. 5 here quoted on the ground that its effect was to permit the jury to construe the written contract, whereas the court itself ought to have construed the same.  Some oral evidence crept into the case, without objection, tending to show a sale by the defendant to Reynolds, notwithstanding the provision of the written contract.  There was also evidence of performance to some extent on the part of Reynolds.  The land was surveyed and platted, and from seventy-five to one hundred contracts were entered into with purchasers, and these were signed by the defendant.  Up to the time of the trial, $6,000 had been received by the defendant in payments upon such lots.  This, however, was five years subsequent to the date of the contract with Reynolds.

The effect of instruction five was to give the plaintiff the

benefit of the consideration of this evidence as tending to show an accomplished sale, notwithstanding the provisions of the written contract. Whether right or wrong, it was advantàgeous to the plaintiff, and not to the defendant.

2. SAME: instruction: prejudice.

A peremptory instruction, construing the contract alone, would have been necessarily fatal to the plaintiff, because such contract could not be held on its face and prior to performance as a contract of sale, as we have already indicated above. Appellant therefore has no ground of complaint in this instruction. The other exceptions are based upon the refusal of the court to give certain instructions requested by the plaintiff. Each of these requested instructions assumes that the written contract already referred to was in legal effect a contract of purchase and sale. For the reason already indicated, such exceptions must also be overruled.

III. Looking to the larger merits of the case, and assuming that the plaintiff and defendant had had the certain conversation substantially as testified to by plaintiff, and that such conversation amounted to a contract for a contingent commission of

3. SAME: recovery of commissions: evidence.

$1,000, the jury was justified in finding that such commission contract did not have within its contemplation such arrangement as was afterwards entered into by the written contract of the defendant and Reynolds. Reynolds never did in fact perform the contract so as to become entitled to a conveyance of any property. After a partial performance, he seems to have submitted to a voluntary forfeiture; the plaintiff paying him and his associate the sum of $500 each.

The record presents no proper ground of reversal, and the judgment below is therefore *Affirmed*.